```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| SHEILA LOGUE,<br><br>       Plaintiff,<br><br>v.<br><br>THE RAND CORPORATION,<br><br>       Defendant. | No. 21-cv-11672-PBS |

**ORDER ON PLAINTIFF'S MOTION REQUESTING AN IN CAMERA REVIEW OF REDACTED DOCUMENT PRODUCED BY DEFENDANT TO ASSESS PRIVILEGE AND TO COMPEL PRODUCTION AS NECESSARY**

CABELL, M.J.

Sheila Logue was employed by The RAND Corporation (RAND) as a contracting officer for 17 years until RAND terminated her in March 2020, ostensibly for poor job performance. Logue claims otherwise and has brought an action against RAND for age and disability discrimination and violation of the FMLA. Presently pending is Logue's motion to have the court conduct an in camera review of an email the defendant produced during discovery in redacted form to determine whether it should be produced without redactions; the defendant opposes the request for an in camera inspection. (D. 25, 29). For the reasons explained below, the motion is <u>allowed</u>.

By way of background, the plaintiff during discovery asked for all documents related to her termination. The defendant in response produced approximately 800 pages of documents but claimed that 14 relevant documents were protected from disclosure in whole or in part by the attorney-client privilege. The defendant prepared an initial privilege log for these documents, describing 11 of them as involving "legal advice" or notes from meetings with in-house counsel. Two other entries concerned the plaintiff's request for her personnel record, and RAND in-house counsel was cc'd on these.

The document at issue here, referenced at No. 10 on the defendant's privilege log, is an email from Nick Bacon, RAND's Director of Human Resources, to Allison Elder, RAND's Vice President of Human Resources, on which Dawn Ross, an Associate General Counsel at Rand, was cc'd (the Bacon email). The Bacon email bears a subject line of "Recommendation for Termination," and the initial log describes it as "email CC'ing RAND counsel regarding Logue."

RAND produced the Bacon email but redacted everything except the header and the last two paragraphs. These paragraphs state that "Linda," presumably Linda Duffy, a supervisory employee, was eager to have a course of action because she was greatly reducing the plaintiff's workload relative to other contract administrators. Bacon also stated that he wanted resolution before

2

performance reviews occurred and noted that the plaintiff's rating would be moved from a two to a one.

Noting that all other purportedly privileged emails involving Attorney Ross were described as asking for or providing "legal advice," Logue's counsel asked RAND to produce the Bacon email in its unredacted form, or to not oppose a motion by Logue for an in camera review of it, but RAND declined to do so.  Instead, RAND prepared an amended privilege log in which it described the Bacon email as "conveying information pulled together at the request of RAND counsel and substance of discussion with RAND counsel regarding Logue."

"[T]he decision to conduct an in camera review generally lies within the discretion of the court." *SEC v. Navellier & Assocs., Inc.*, No. 17-cv-11633-DJC, 2019 WL 285957, at *4 (D. Mass. Jan. 22, 2019).  As "the very purpose of conducting an in camera review is to determine which . . . of a group of documents are privileged, . . . in camera reviews should be encouraged." *In Re Grand Jury Subpoena*, 662 F.3d 65, 70 (1st Cir. 2011).  Further, when "the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is *heightened.*" *Id.* (emphasis added).

The plaintiff argues that because there is no evidence that Bacon received any legal advice from counsel or through an intermediary, and Duffy did not recall ever discussing legal advice

with Bacon, the Bacon email, apparently, merely copies Attorney Ross rather than reflects privileged communications. Merely copying an attorney on a communication does not by itself create any privilege. *See, e.g., Kinzer v. Whole Foods Market*, No. 20-cv-11258-ADB, 2020 WL 355777, at *1 (D. Mass. Feb. 7, 2022) (compelling production of communications on which in-house counsel were copied but which were not communicated for purpose of securing legal advice). Even if the amended privilege log is now deemed to claim a legitimate privilege, the brief history regarding the treatment of the Bacon email has raised a genuine question as to whether it contains privileged communications and courts in such instances can and perhaps should conduct an in camera review to settle the issue. *See Grand Jury Subpoena*, 662 F.3d at 70 (given prudential purpose of in camera review, it should be encouraged, not discouraged).

The defendant counters that an in camera inspection is not warranted unless there are substantial factual issues as to the existence or waiver of privilege. Here, it argues, there are no substantial factual issues of privilege because (1) RAND promptly provided a privilege log sufficiently explaining the claim of privilege, and (2) the series of emails on the log shows that Attorney Ross was consulted regularly by RAND's human resources personnel on Logue's situation.

Both parties have presented reasonable arguments in support of their respective positions, but it ultimately leaves the court unable to determine the import of Attorney Ross's inclusion as a recipient of the Bacon email without reviewing the email itself. Put more simply, the circumstances underlying the initial and subsequently amended descriptions of the Bacon email have raised a legitimate issue as to whether the Bacon email is privileged in in part or at all.

As noted above, most of the entries in the initial privilege log explicitly list the provision of legal advice as a basis for withholding those documents, showing that whoever prepared the log was cognizant of the standard for claiming attorney-client privilege. "Legal advice" is even noted when describing some documents on which no attorney at RAND was copied. By contrast, the initial description for the Bacon email does not refer to any legal advice, merely noting that Attorney Ross was copied "regarding Logue."

Again, it is true that RAND amended its privilege log to describe the Bacon email as conveying legal advice, but this amendment did not occur until after the plaintiff challenged the privilege claim for this document. In this respect, as well as with respect to the quite small volume of material to be reviewed, and the copying of Attorney Ross on the Bacon email rather than the direct mailing of it to her, this case differs from decisions

cited by RAND in opposing the plaintiff's motion.  *See Fidelity Int'l Currency Advisor A Fund, LLC ex rel. Tax Matters Partner v. United States*, Nos. 05-cv-40151, 06-cv-40130, 06-cv-40243, 06-cv-40244, 2008 WL 4809032, at *12 (D. Mass. Apr. 18, 2008)(ordering third-party law firm to produce opinion letters and related correspondence, but noting that no party had requested in camera review, such review would have been voluminous, and allowing law firm a further opportunity to request in camera review of any specific documents it believed privileged notwithstanding the court's analysis on the opinion letters); *see also* C*ue, Inc. v. General Motors*, No. 13-cv-12647-IT, 2015 WL 4750844 (D. Mass. Aug. 10, 2015) (denying in camera review based on contention that in-house counsel had rendered business rather than legal advice where all emails were to or from in-house trademark counsel and there was no indication he had rendered business advice).

Accordingly, the plaintiff's motion is <u>allowed</u>.  The defendant shall submit an unredacted copy of the Bacon email to the court for an in camera review within 5 days of the date of this order.

**So ordered.**                              /s/ Donald L. Cabell
                                             DONALD L. CABELL, U.S.M.J.

DATED:  July 7, 2022